UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------X

BRIAN D. CLARK,                          :

                                         :
    Plaintiff,
                                         :       CIVIL ACTION
-vs-                                             NO. 4:09-CV-10328
                                         :
PROVIDENCE AND WORCESTER
RAILROAD COMAPANY,
                                         :
    Defendant.                           :

                                         :
---------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PROVIDENCE AND WORCESTER RAILROAD'S MOTION REGARDING PREEMPTION AND FELA NEGLIGENCE PER SE**

**I.   INTRODUCTION**

Now comes the Plaintiff in the above captioned matter and respectfully moves this Court for an order denying Defendant Providence and Worcester Railroad's Motion Regarding Preemption and FELA Negligence Per Se.  Plaintiff respectfully requests that this Court find that Providence & Worcester Railroad's violations of Massachusetts and Federal law are admissible as evidence of Defendant's negligence with regard to the accident in which Plaintiff was impaled on a metal rebar as he dismounted from a tank car.   For the purposes of this motion only,

Plaintiff will not be arguing that violations of the Massachusetts Track Clearance Statute or OSHA establish negligence per se.

## II. FACTUAL BACKGROUND

Plaintiff, Brian Clark (hereinafter "Mr. Clark" or Plaintiff) commenced this action to recover damages from Defendant, Providence and Worcester Railroad (hereinafter "P&W" or "Defendant"), pursuant to the Federal Employers' Liability Act, 45 U.S.C.A., Section 51, et seq., for injuries sustained on January 26, 2009, while working within the scope of his employment as an employee of P&W. On the day of his injury Mr. Clark was working with Stephen McGill, an engineer, switching cars throughout P&W's Worcester yard. At 7:20 p.m. the train on which Mr. Clark was working stopped on the rip track adjacent to a signal case so that Mr. Clark could put the derail back on. (Deposition of Brian Clark, pp. 114, 157, relevant excerpts from Mr. Clark's deposition date attached hereto as "Exhibit A")

Plaintiff was riding on the back of a tank car and as he dismounted the tank car he was impaled by an uncovered metal rebar that was approximately four feet, ten inches long and was sticking out of the ground between the signal case and the rip track. *Id. at 293-299.* Mr. Clark sustained serious and traumatic injuries as a result of the metal rebar entering approximately seven inches in his colo-rectal area. After the incident emergency workers transported Mr. Clark by ambulance to Umass Medical Center where he ultimately underwent three surgeries to repair the puncture and internal injuries he sustained. *Id. at 312-313.*

As a result of Defendant's negligence, failure to provide a safe work space, and violations of Federal and state law, Plaintiff suffered serious injuries that required a rigid sigmoidoscopy, CT scan of the abdomen and pelvis, and exploratory laparotomy. *Id. at 83-92.* The laparotomy included debridement of devitalized tissue, diverting loop sigmoid colostomy and placement of

two pelvic drains and a penrose drain.  The Plaintiff remained in the hospital for two weeks and several months later he was readmitted to the hospital to undergo additional surgery. *Id. at 316*. After being readmitted to reverse the sigmoid loop colostomy Mr. Clark developed an abscess and was forced to endure a third procedure. *Id. at 85*.

The rebar, on which Plaintiff was impaled, was precariously close to the rip track where Mr. Clark was working.  Through discovery it was revealed that the metal rebar was only seven feet and four inches from the track.  (Deposition of Bernard Cartier, pp. 55, relevant excerpts from Mr. Cartier's deposition date attached hereto as "Exhibit B).  The rebar was also bent toward the track and at its closest point was a mere six feet ten inches from the track. *Id. at 55-56*.

Massachusetts General Laws Chapter 160 section 134A (hereinafter "The Massachusetts Clearance Statute")  prohibits any obstructions within eight feet, six inches from the center line of a track.  This eight foot six inch clearance is also required by the American Railway association and a majority of states.  From the evidence gathered during discovery it is clear that the rebar was too close to the track and created a close clearance situation. This was exactly the dangerous situation M.G.L c. 160 §134A was meant to protect against, the death or serious injury of a railroad employee.

The placement of an uncovered rebar dangerously close to a rip track also violates the Occupational Health and Safety Act (hereinafter "OSHA").  Section 5(1) (1) of OSHA requires that employers provide employees with a workplace free of recognized hazards.  As a result of an uncovered rebar being left, for three months and dangerously close to a track where workers frequently mounted and dismounted trains, Plaintiff was impaled and suffered life threatening injuries which, to this day, have a serious and detrimental effect on his life.

### III.     The Federal Employers' Liability Act

This action was brought pursuant to the Federal Employers' Liability Act (hereinafter "FELA").  FELA provides a private cause of action for railroad employees injured in the course of their employment as railroad workers.  FELA states that:

> "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories . . .  shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative. . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."
> 45 U.S.C. § 51.  FELA was enacted for the purpose of preventing railroad accidents.

Ries v. Amtrak, 960 F.2d 1156, 1158 (3d Cir. Pa. 1992).  The legislation was meant to reduce the number of work-place injuries to railroad employees and shift the "Human Overhead" of doing business to the employer.  Kernan v. American Dredging Co., 355 U.S. 426, 431-432 (U.S. 1958); see also Wilkerson v. McCarthy, 336 U.S. 53, 68 (1949) (Douglas J., concurring) ("The Federal Employer's Liability Act was designed to put on the railroad industry some of the cost for the legs, eyes, arms and lives which it consumed in its operations").

Courts interpreting FELA have done so broadly and the Supreme Court, in Kernan v. American Dredging Co., 355 U.S. 426, 432 (U.S. 1958) found that the

> "general congressional intent was to provide liberal recovery for injured workers [and] that Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers."

Kernan, 355 U.S. 432.  Thus in interpreting FELA courts have universally looked to common law, state and federal legislation, and regulations to determine the duty of every railroad employer to provide a safe and hazard free work environment for its employees.  Stevens v. Bangor & Aroostook R.R., 97 F.3d 594, 598 (1st Cir. Me. 1996) ("plaintiff must prove the traditional common law elements of negligence -- duty, breach, damages, causation, and

foreseeability"); Brown v. Cedar Rapids & I. C. R. Co., 650 F.2d 159, 163 (8th Cir. Iowa 1981) ("the trend in federal as well as state court is to allow admission of advisory safety codes promulgated by governmental authority as showing an acceptable standard of care"); Ries v. Amtrak, 960 F.2d 1156, 1162 (3d Cir. Pa. 1992) (violation of OSHA admissible as evidence of breach of standard of care).

Plaintiff, Brian Clark, was impaled on a metal rebar, negligently left by Defendant too close to the track on which Plaintiff was working. Defendant violated both state and Federal law when it erected a dangerous and uncovered barricade around an open pit and failed to warn its employees of the presence of the danger. The state and Federal laws at issues in this case are not preempted by any Federal law and are admissible to establish that Defendant owed a duty to Plaintiff to provide him with a safe workplace. Further, the violations these statutes are admissible to show that Defendant breached that duty and caused Mr. Clark to be impaled by the uncovered metal rebar.

## IV. MASSACHUSETTS TRACK CLEARANCE STATUTE IS ADMISSIBLE AND NOT PREEMPTED BY ANY FEDERAL LAW

### a. MASSACHUSETTS GENERAL LAW CHAPTER 160 SECTION 134 A – PROPER CLEARANCE IN TRACKS AND RAILROADS – IS A SAFETY STATUTE AND SERVES AS AN APPROPRIATE "GAP FILLER" TO THE FEDERAL RAILROAD SAFETY ACT

Article VI, clause 2 of the United States Constitution declares that Federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S.C.S. Const. Art. VI, Cl. 2. Federal law, however does not automatically preempt every state law in existence and, in fact, there is a strong presumption against preemption where Federal law would "supplant[] historic state police powers." Tyrrell v. Norfolk S. Ry. Co., 248 F.3d 517, 522 (6th Cir. Ohio 2001); Philip Morris v. Reilly, 312 F.3d 24, 28 (1st Cir. Mass. 2002) (state police powers include

statutes passed for the health and welfare of citizens).  Therefore, courts presented with a question of Federal preemption must look to the congressional intent of the Federal law at issue and determine whether:

> "(1) the preemptive intent is 'explicitly stated in [a federal] statute's language or implicitly contained in its structure and purpose'; (2) state law 'actually conflicts with federal law'; or (3) 'federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'"

Green Mt. R.R. Corp. v. Vermont, 404 F.3d 638, 641 (2d Cir. Vt. 2005).  First, however, the court must decide which Federal law applies and therefore which law's preemption provision will govern the issues at hand.

Defendant, in its Motion in Limine, argues that the Massachusetts Clearance Statute is a construction statute and is therefore governed by the Interstate Commerce Commission Termination Act (hereinafter "ICCTA").  Defendant, however, fails to acknowledge that the ICCTA's purpose is to "regulate the economics and finances of the rail carriage industry." New York Susquehanna & W. Ry. Corp. v. Jackson, 500 F.3d 238, 252 (3d Cir. N.J. 2007).  More specifically, the ICCTA's primary purpose was to deregulate the railroad industry. Id.  The Massachusetts Clearance Statute at issue in this case is not intended to and does not affect the economics or finances of the railroad industry and is intended solely to protect railroad employees from exactly the type of devastating and life threatening incidents that led to Plaintiff's injuries.  The Massachusetts Clearance Statute is a safety statute and, therefore, whether that statute is preempted should be analyzed pursuant to the Federal Railroad Safety Act (hereinafter "FRSA") and not the ICCTA.

The state of Massachusetts and 45 other states have enacted railroad clearance statutes or regulations with largely identical language regarding clearances. Brown, 650 F.2d at 164 fn. 4. The Massachusetts Clearance Statute states, "No other structures or obstructions shall be

6

maintained in such yard nearer than eight feet and six inches…from the center line of any track" M.G.L. c. 160 §134A (2010).  The emergency preamble to Section 134A of chapter 160 – Proper Clearance of Tracks in Railroad Yards – passed in 1956 read:

> "The deferred operation of this act would tend to defeat its purpose which is to make immediately effective certain safety measures relating to railroad yards, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public safety and convenience. M.G.L. c. 160 §134A (1956)"

In <u>Tyrrell v. Norfolk S. Ry. Co.</u>, 248 F.3d 517, 522 (6th Cir. Ohio 2001), a case precisely on point with the case at bar, the defendant argued that the Ohio clearance regulation at issue was a construction regulation and because it "affected rail construction" the regulation was preempted by the ICCTA. <u>Tyrrell</u>, 248 F.3d at 521.  The plaintiff in <u>Tyrell</u>, a trainman, was struck by a train as he was walking between two tracks.  The incident caused Mr. Tyrell severe injuries eventually necessitating the amputation of his lower right leg.  <u>Id.</u> at 520.  The plaintiff instituted a FELA action claiming that the Railroad Company was negligent in not following the Ohio state regulation that required a clearance of "at least 14 feet clearance between the centers of adjacent and parallel tracks."[1] <u>Id</u>.

The court in <u>Tyrell</u> noted that the Surface Transportation Board, the Federal agency charged with administering the ICCTA, supported and advocated for the court to find that the Ohio clearance regulation was a safety regulation more appropriately analyzed pursuant to the FRSA.  The court found that congress intended that the ICCTA and FRSA "be construed **in pari materia**" and while both had some responsibility for promoting safety in rail travel it was the

---

[1] Defendant argues that <u>Tyrell</u> is inapplicable to the case at bar because Mr. Clark was impale on "a temporary barricade" and was not injured as a result of a close clearance situation created by a permanent structure.  Defendant does not cite any case law or legislative history that would indicate a legislative intent to confine the applicability of the Massachusetts Clearance Statute to 'permanent structures." Such a narrow reading of the statute would defeat the explicit intent of the legislation to preserve "the public safety".  If the Court were to adopt Defendant's interpretation of the Massachusetts' Clearance Statute railroad companies would be allowed, as was the case here, to erect "temporary barricades" for months at a time without so much as warning its employees of the barricade or the open pit the barricade surrounded.

Federal Railroad Authority, pursuant to the FRSA, that "exercised primary authority over rail safety matters." Tyrrell, 248 F.3d at 523 (emphasis in the original).  The court acknowledged that "federal and state case law recognize that state track clearance provisions are designed to protect railroad workers by providing them with sufficient work space between tracks." Id. at 523, 524 (citing Southern Pacific Transp. Co. v. Public Utilities Com., 647 F. Supp. 1220, 1222 (N.D. Cal. 1986) (California Clearance regulation); Brown, 650 F.2d at 163 (court upheld jury instruction classifying Iowa clearance regulation as a part of safety code); United Transp. Union v. Department of Transp., 136 Mich. App. 1, 4 (Mich. Ct. App. 1984) (Michigan's clearance statute "provides for the safety of railroad employees")).

Like the clearance statutes and regulations in the forty five other states throughout the country, The Massachusetts Track Clearance Statute is a safety statute and the correct preemption analysis lies with the FRSA.   The FRSA was passed with the purpose "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101.  To that end The FRSA explicitly acknowledges the importance and enforceability of state laws and regulations. This acknowledgement is contained the preemption clause of the FRSA which states:

> Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable.  A state may adopt and continue in force a law, regulation or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the state requirement.  49 U.S.C. § 20106.

Here the FRA has not promulgated any regulation that would regulate track clearance. Tyrrell, 248 F.3d at 525.  In fact, the FRA has explicitly stated, in a "frequently asked questions" section of its website regarding track clearances that "Each State, through its Department of Transportation or other State agency, prescribes railroad track dimensions. Track Clearances, http://www.fra.dot.gov/Pages/1232.shtml (last visited November 6, 2010).

In light of the foregoing case law and the plain language and legislative history of the FRSA it is it is clear that the Massachusetts Track Clearance Statute is a safety statute that "serves as a permissible gap filler in the federal rail safety scheme." <u>Tyrrell</u>, 248 F.3d at 525.  It is, therefore admissible and not preempted by either the FRSA or the ICCTA.

### b. Even if the ICCTA is applicable to the safety statute 134a does not conflict or Interfere with the railroad ability to operate

Even if Defendant's assertion is true, which it is not, and the court finds that the Massachusetts Track Clearance Statute is a "construction" statute, the court should still find that the legislation is not preempted by the ICCTA.  Preemption, as discussed supra, is only applicable in instances where a state law conflicts with the federal law at issue.

The ICCTA's express preemption clause states "except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies under federal and state law." 49 U.S.C. §10501(b).  Courts analyzing ICCTA preemption have found that some state laws will survive a preemption challenge if they "impose appropriate public health and safety regulations on the interstate railroads [and] do not interfere with or unreasonably burden railroading." <u>New York Susquehanna & W. Ry. Corp. v. Jackson</u>, 500 F.3d 238, 252 (3d Cir. N.J. 2007). "Because the Act's [ICCTA] subject matter is limited to deregulation of the railroad industry . . . courts and the board have rightly held that it does not preempt all state regulation affecting transportation by rail carrier." <u>Id</u>.

Here like in <u>New York Susquehanna & W. Ry. Corp.</u>, Massachusetts has passed a statute pursuant to its police powers to protect the health and safety of its citizens.  The statute in no way effects the operation of the railroad or impedes Defendant from generating income. Defendant

9

has not pointed to any support for the proposition that the Massachusetts Clearance Statute "burdens railroading" other than to state without support that the "Track Statute directly interferes with construction operations." (Def. Brief at 8.). To the contrary, the statute could not have had any appreciable effect on the construction project as Defendant's employees freely admitted that the metal rebar had been in place for nearly three months covering an open excavation pit. It would appear from this admission that the Massachusetts Track Clearance Statute had absolutely no effect on the construction operations of Defendant, because construction had ceased on the project. Moreover, the only effect the enforcement of this statute would have on Defendant would be to hold them accountable for leaving an open excavation pit, poorly barricaded, and too close to the track on which employees were working on a daily basis. Defendant's argument essentially asks this Court to allow railroads to ignore basic safety regulations because those statutes may be inconvenient for the railroad or force them to adequately secure potentially dangerous site. This reading of the ICCTA would allow the railroad to avoid its duty under FELA to provide safe workplaces for its employees and would be contrary to the express intent of FELA.

The Massachusetts Track Clearance Statute is neither burdensome nor does it unfairly discriminate against railroads. New York Susquehanna & W. Ry. Corp. 500 F.3d at 252. The statute simply requires appropriate clearance between tracks. The statute is nearly identical to 45 other state's statutes and regulations and the Surface Transportation Board has rightly held that similar health and safety regulations neither target the railroad industry or "prevent[] the railroad from carrying out its business in a sensible fashion." Id. at 254. In short, the Massachusetts Clearance Statute is not preempted by either the FRSA or the ICCTA and serves as an enforceable "gap filler" in the federal railroad regulatory scheme. Tyrrell, 248 F.3d at 525.

V.  **THE MASSACHUSETTS CLEARANCE STATUTE IS EVIDENCE OF A STANDARD OF CARE IN THE RAILROAD INDUSTRY AND DEFENDANT'S VIOLATION OF THIS STATUTE IS ADMISSIBLE AS EVIDENCE OF NEGLIGENCE**

The Court, because the Massachusetts Clearance Statute is enforceable and not preempted by Federal law, should admit the statute as evidence of a standard of care in the railroad industry. Furthermore, evidence of its violation should also be admitted to show Defendant's deviation from that standard of care. In Brown the court, in upholding the district court's admission of and Iowa clearance regulation, stated that 'this action of the responsible public authorities is relevant in determining the common law standard of care to be observed by the defendant." Brown, 650 F.2d at 162. The court went on to note that "the 'experience and expertise' of public authorities can provide valuable assistance to the trier of fact in determining what standard of care is effective and feasible. Id.

Here, like in Brown, the state enacted the Massachusetts Clearance Statute specifically to protect rail road workers from hazards and obstructions between the tracks on which they were working. While evidence of the existence of this statute may not serve to establish negligence per se it is certainly admissible to show a standard of care the state expected Defendant to adhere to in order to ensure the safety of its employees. The Massachusetts Clearance Statute is not preempted by any federal law and is an enforceable safety statute. The existence of this statute and its blatant violation is relevant to the issue of Defendant's negligence, the statue should be admitted as evidence of a standard of care, and Plaintiff should be allowed to offer evidence and expert testimony that Defendant's violation of the Massachusetts Clearance Statute caused his life threatening injuries.

VI.  **THE OSHA GENERAL DUTY CLAUSE IS NOT PREEMPTED BY THE FEDERAL RAILROAD SAFETY ACT**

Plaintiff alleges that Defendant violated the OSHA when it left an open pit inadequately barricaded the pit with an uncovered metal rebar and three wooden stakes.. Plaintiff further alleges that Defendant's violation of OSHA's general duty clause to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm" was a substantial contributing cause of his injuries. Defendant, relying on a policy statement written nearly four decade ago by the FRA, argues that OSHA is not applicable and is preempted by the FRSA. (Def Brief pg. 19). The relevant sections of OSHA applicable to the case at bar, are not preempted by FRSA, and are enforceable to ensure railroad workplaces are safe and hazard free.

As was previously discussed Federal law is the supreme law of the land and any state law or regulation that contradicts Federal Law is preempted. U.S.C.S. Const. Art. VI, Cl. 2. In order to determine whether a Federal law is preempted by another Federal law courts will look to the language and legislative intent of each Federal law at issue. Specifically, OSHA, applies to the safety of all workplaces unless "a sister federal agency is vested with the statutory authority to prescribe or regulate occupational safety or health matters within its purview." Donovan v. Red Star Marine Services, Inc., 739 F.2d 774, 776 (2d Cir. 1984). OSHA contains a negative preemption clause which states:

> Nothing in this clause shall apply to any working conditions of employees with respect to which other federal agencies, and State agencies acting under section 2021 of title 42, exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

29 U.S.C. § 653(b)(1). Courts interpreting this clause of OSHA have found that in order for OSHA to be preempted the Federal agency vested with the duty to regulate the safety of a specific industry must assert its regulatory authority and mere possession of the authority will not prevent OSHA from promulgating and enforcing regulations in such industry. Bean v. CSX

12

Transp., 289 F. Supp. 2d 277, 281 (N.D.N.Y 2003) (citing Chao v. Mallard Bay Drilling, Inc., 534 U.S. 235, 241, 151 L. Ed. 2d 659, 122 S. Ct. 738 (2002).

Defendant relies on the FRA's 1978 policy statement and argues that Plaintiff's actions were "railroad operations" and, therefore, beyond the scope of OSHA regulation. The FRA's 1978 policy statement states that the FRA's " 'proper role' is in 'addressing hazardous working conditions in those traditional areas of rail road operations (i.e. 'the movement of equipment over rails')." Williams v. Northeast Ill. Reg'l Commuter R.R. Corp., 2002 U.S. Dist. LEXIS 11908 (N.D. Ill. June 27, 2002). Defendant points to no case law or other source that would support such a broad interpretation of the FRA's policy statement so as to include the erection of a barricade with a metal rebar and three wooden stakes around an open excavation pit. This barricade did not enhance or interfere with how Defendant's equipment moved over the rails. By its own admission, Defendant erected the barricade around the open pit as a safety measure. (Deposition of David Fitzgerald, pp. 40-41, relevant excerpts from Mr. Fitzgeralds' deposition date attached hereto as "Exhibit C"). Defendant admits that the hole next to the tracks needed to be secured in order to prevent accidents. *Id.* Defendant cannot now, after a horrific accident caused because they negligently erected an inadequate and unsafe barricade around an open pit, claim that because Mr. Clark was operating a train his impalement was part of his work in "railroad operations." This claim if accepted by the court would allow Defendant to subvert a myriad of Federal and state safety regulations by simply claiming that because workers are engaged in moving equipment over rails any incident that results in injury or death to an employee is part of "railroad operations."

Here, as previously noted, the FRA, in its regulations or the 1978 policy statement, does not address the hazards associated with the unprotected metal rebars exposing a worker(s) to the

potential of impalement. Section 5(1) (1) of OSHA, therefore, is the appropriate enforcement mechanism to address such a blatant safety violation by Defendant. Nor does the FRA regulate clearances between tracks. It is clear that the FRSA does not preempt OSHA completely and, in this instance, the FRSA is silent on the issue before the court. OSHA, in the absence of FRA regulation on point, is applicable, enforceable, and not preempted by the FRSA.

**VII.     Evidence of Defendant's violation of OSHA is relevant and admissible on the issue of negligence**

Finally, and in light of the previous preemption analysis, Plaintiff seeks to admit Section 5(1) (1) of OSHA as evidence of a standard of care in the railroad industry. Further, Plaintiff seeks to admit evidence and expert testimony of Defendant's violation of OSHA and that violation's causal relationship to Plaintiff's devastating injuries.

OSHA regulations are admissible in a FELA case as evidence of a standard of care and evidence of a violation of OSHA regulation is admissible to establish a breach of the defendant's duty to its employees. Robertson v. Burlington N. R.R., 32 F.3d 408, 410-411 (9th Cir. Wash. 1994); Albrecht v. Baltimore & O. R. Co., 808 F.2d 329, 332 (4th Cir. Md. 1987) ("regulations promulgated under . . . [OSHA] provide evidence of the standard of care exacted of employers"); Ries v. Amtrak, 960 F.2d 1156, 1162 (3d Cir. Pa. 1992) ("Such a violation [of OSHA] would only be evidence which could be considered by a jury in trying to determine whether an employer acted negligently.") The court in Reis cited comment 2 of section 288B of the Restatement Second of Torts and observed that "Evidence of an OSHA violation, in and of itself, does not 'affect' liability; it is the inferences that the trier of fact draws from the evidence that 'affect' liability".

Here, there is evidence that Defendant erected a barricade around an open excavation pit consisting of and uncovered metal rebar and three wooden stakes wrapped with caution tape.

14

Defendant, while attempting to make the site safer, fell woefully short of its duty, was negligent in its efforts and, instead of securing the pit, made the area significantly more dangerous. Plaintiff was impaled by the uncovered metal rebar that Defendant placed too close to the track on which Plaintiff was working. OSHA's general duty clause requires that employers provide employees with "employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654.  And uncovered metal rebar sticking out of the ground where employees frequently mount and dismount trains and other equipment is obviously hazardous, as was proven when Plaintiff dismounted a train, expecting to make contact with an unobstructed ground but instead was impaled.  Evidence of Defendant's OSHA violation, while not conclusive on the issue of negligence, is admissible to show that Defendant had a duty to maintain a hazard free workplace.  Furthermore, evidence of a violation of OSHA is admissible to establish that Defendant breached its duty to Plaintiff when it placed the uncover metal rebar directly in his workspace without warning him of its presence or properly securing the area to avoid exactly the type of injury Mr. Clark suffered.

### VIII.  CONCLUSION

    For the reasons set forth herein, Plaintiff moves this Court to admit Defendant's violations of OSHA and Massachusetts' Clearance Statute as evidence of a standard of care in the railroad industry.  Additionally Plaintiff request the at this Court admit evidence of Defendant's violation of these statutes to establish negligence.

Dated: November 12, 2010

> Respectfully submitted,
> The Plaintiff, Brian D. Clark,
> By His Attorney,
>
> /s/ Robert T. Naumes /s/
> Robert T. Naumes, Esq. BBO# 367660
> Thornton & Naumes LLP
> 100 Summer Street, 30th Floor
> Boston, MA 02110
> (617) 720-1333