# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN D. CLARK,  )<br>  )<br>    Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>PROVIDENCE AND WORCESTER  )<br>RAILROAD COMPANY,  )<br>  )<br>    Defendant.  )<br>  ) | Civil Action No.<br>09-10328-FDS |

## MEMORANDUM AND ORDER
## ON DEFENDANT'S MOTION IN LIMINE

**SAYLOR, J.**

This is a negligence action brought by Brian D. Clark against the Providence and Worcester Railroad Company for injuries he sustained while working at the railroad's Worcester yard. On January 26, 2009, Clark, a conductor, dismounted from the back of a tank car. As he stepped down, he was impaled by an approximately five-foot length of steel reinforcing rod, or rebar, sticking up from the ground by the track. The rebar punctured Clark's colon, seriously injuring him.

The rebar was part of a safety cordon that P&W had erected around an excavation pit near the track. The railroad was in the process of laying underground lines and had erected a temporary barricade around the site. The barricade comprised three wooden stakes, the piece of rebar, and yellow caution tape. The rebar was located approximately seven-and-a-half feet from the track.

Clark filed this action pursuant to the Federal Employer's Liability Act ("FELA"), 45

U.S.C. §§ 51-60, alleging that his injuries were the result of the railroad's negligence. As evidence of this negligence, he points to two statutes. The first statute, Mass. Gen. Laws. ch. 160, § 134A, provides for minimum distances between railroad tracks and other structures; among other things, it prohibits "structures or obstructions" in a railroad yard less than eight and one-half feet from the track. The second statute, 29 U.S.C. § 654, is part of the Occupational Health and Safety Act ("OSHA"), 29 U.S.C. §§ 651-678, and creates a general duty to keep the workplace free from hazards.

Following discovery, P&W filed the present motion to resolve certain questions of law. Specifically, it seeks a ruling on the following issues:

(1) Is Mass. Gen. Laws ch. 160, § 134A preempted by the Interstate Commerce Commission Termination Act, 49 U.S.C. §§ 10101-11908?

(2) Is the OSHA general-duty statute, 29 U.S.C. § 654, inapplicable by virtue of the Federal Railroad Safety Act, 49 U.S.C. §§ 20101-21311?

(3) Will a violation of § 134A or § 654 form a basis for negligence *per se* and/or bar P&W's contributory negligence defense under FELA?

For the following reasons, the Court finds that the Massachusetts statute, § 134A, is not preempted; the OSHA statute, § 654, is not applicable; and a violation of § 134A can neither constitute negligence *per se* nor bar defendant's contributory-negligence defense. The motion will therefore be granted in part and denied in part.

I. **Analysis**

　A. **Mass. Gen. Laws ch. 160, § 134A**

Defendant contends that Mass. Gen. Laws ch. 160, § 134A is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101-11908. Congress

enacted the ICCTA, in part, to eliminate certain state economic and regulatory controls over the railroad industry. It established the Surface Transportation Board ("STB") to govern railroad transportation, construction, and operation. Under the ICCTA, state law governing such activities is explicitly preempted unless it is neither discriminatory nor unreasonably burdensome. 49 U.S.C. § 10501(b); *New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 253 (3d Cir. 2007) (describing test for state-law preemption by the ICCTA).[1]

The ICCTA, however, is part of a broader network of federal statutes regulating railroads. In particular, Congress has also enacted the Federal Railway Safety Act ("FRSA"), 49 U.S.C. §§ 20101-21311, which was designed to promote the national regulation of railroad safety. The FRSA provides the Federal Railway Administration ("FRA") with the authority to regulate rail safety. It has its own federal preemption provision and allows states to promulgate laws governing railroad safety where the federal government has yet to create regulations covering the same subject matter. *See* 49 U.S.C. § 20106; *see CSX Transp. v. Easterwood*, 507 U.S. 658

---

[1] 49 U.S.C. § 10501(b) provides:

The jurisdiction of the [Surface Transportation] Board over--

(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

(1993) (describing test for state-law preemption by FRSA).[2]

Courts considering the interaction between the ICCTA and the FRSA have concluded that FRSA has primary jurisdiction over statutes related to railroad safety. "Based on the federal railway statutes, the STB and FRA's jurisdictional management, and the resulting regulatory systems, Congress vested the FRA with primary authority over national rail safety policy . . . ." *Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 523 (6th Cir. 2001) (internal quotations omitted); *accord Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 808 (5th Cir. 2011)*; Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 107 (2d Cir. 2009); *Iowa, Chi. & E. R.R. Corp. v. Wash. Cnty.*, 384 F.3d 557, 559-60 (8th Cir. 2004); *Boston and Me. Corp. v. STB*, 364 F.3d 318, 321 (D.C. Cir. 2004).

The ICCTA, on the other hand, is primarily concerned with state *economic* regulation of railway activities, including attempts to "manage or govern rail transportation." *Elam*, 635 F.3d at 805-07 ("Although States retain the police powers reserved by the Constitution, the Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be completely exclusive. Any other construction would undermine the uniformity of Federal standards and risk the balkanization and subversion of the Federal scheme of minimal regulation . . .") (quoting H.R. Rep. No. 104-311, at 95-96).

Defendant contends that Mass. Gen. Laws ch. 160, § 134A is a "construction statute" and thus seeks to govern an essentially "economic" activity—the railroad's construction and

---

[2] 49 U.S.C. § 20106 provides:

A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

4

maintenance of its yard areas.[3] The case law, however, points the other way. Courts considering similar laws have construed them as safety statutes. *See Tyrrell*, 248 F.3d at 523 (relying in part on opinion of STB as *amicus curiae*); *Brown v. Cedar Rapids & I.C.R. Co.*, 650 F.2d 159, 163 (8th Cir. 1981) (characterizing track-clearance regulations as part of a safety code); *Southern Pac. Transp. Co. v. Pub. Utils. Comm'n of Cal.*, 647 F. Supp. 1220, 1222 (N.D. Cal. 1986) (holding that a comparable California regulation had the purpose of providing employees with a safe working environment); *United Transp. Union v. Dep't of Transp.*, 136 Mich. App. 1, 4 (1984) (ruling that Michigan's track-clearance statute provided for worker safety); *Reading Co. v. Pennsylvania Pub. Util. Comm'n*, 188 Pa. Super. 146, 150 (1958) (stating that "adequate clearances between cars on parallel tracks" provided "for the physical safety of employees whose duties took them there").

The Sixth Circuit's opinion in *Tyrell* is squarely on point. In *Tyrell*, the court considered an Ohio law that required railroads to construct parallel tracks at least fourteen feet apart. 248 F.3d at 520. Relying in part on the STB's view as *amicus*, the court held that the clearance regulation, although ostensibly referring to construction, was "related to railroad safety" within the meaning of 49 U.S.C. § 20106. *Id.* at 523. The court noted that such statutes yield safety benefits for employees working along tracks and that the Ohio Supreme Court had classified the

---

[3] § 134A provides in relevant part:

Tracks in a yard or yard area owned and maintained by a corporation or company operating a railroad shall have a minimum distance between center lines of parallel tracks of not less than thirteen feet . . . . Platforms or buildings may be constructed or maintained at a minimum distance of five feet nine inches from the center line of the track adjacent to any such platforms or buildings . . . .

No other structures or obstructions shall be maintained in such yard nearer than eight feet and six inches . . . .

regulation as related to rail safety. It then proceeded to analyze federal preemption under the FRSA rather than the ICCTA.

The present statute appears to the Court to be even more strongly related to railway safety. Section 134A directs railroads to provide minimum clearance between tracks and obstructions in its rail yards. The safety benefit of keeping track areas clear of obstructions appears obvious, while the economic effects of the law are much less apparent.[4] Furthermore, the statutory history of § 134A reveals that the legislature viewed the statute as a safety law when it was enacted:

> The deferred operation of this act would tend to defeat its purpose, which is to make immediately effective certain safety measures relating to railroad yards, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public safety and convenience.

Act of April 5, 1956, ch. 160, Mass Gen. Laws ch. 160, § 134A (1956) (emergency preamble), *available at* http://archives.lib.state.ma.us/actsResolves/1956/1956acts0240.pdf. Accordingly, the Court will assess whether § 134A is preempted by the FRSA.

The FRSA preempts state safety regulations only where "the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106. Defendant has failed to cite any federal regulation or order addressing track clearances. On the contrary, the evidence indicates that the FRA has

---

[4] The fact that § 134A might be read to apply to temporary obstructions, such as the barricade at issue in this case, does not render it any less a safety statute, or any more a statute regulating "economic activity." Defendant contends that such an interpretation would allow state law "to regulate the actual methods of construction, not solely the placement of permanent structures." (Def. Mot. at 10). But the touchstone remains whether the statute is "related to railroad safety," and restrictions on the distance of temporary obstructions from tracks does not alter the statute's primary purpose and effect.

6

consciously declined to preempt the states in this area. *See* Track Clearances, Federal Railroad Administration, http://www.fra.dot.gov/Pages/1232.shtml ("Each State, through its Department of Transportation or other State agency, prescribes railroad 'clearance' dimensions, which include track centers. . . . [T]he FRA does not prescribe track center distances for construction and maintenance of trackage."); *see also Brown*, 650 F.2d at 164 n.4 ("Forty-five states have rules or regulations prescribing minimum clearances.").[5]

Under the circumstances, and in light of the lack of action by the FRA in the area of track clearances, the Court finds that § 134A is not preempted.[6]

**B.    29 U.S.C. § 654**

Defendant next contends that 29 U.S.C. § 654, OSHA's "general-duty statute," is rendered inapplicable by the FRA's assertion of jurisdiction.[7]  OSHA was enacted in 1970 for the purpose of assuring "safe and healthful working conditions" for workers in the United States. 29 U.S.C. § 651(b). As a general-safety statute, OSHA overlaps with various other statutory safety schemes governing specific industries. Doubtless because of this, OSHA contains a clause that

---

[5] Following *Tyrell*, the Court does not believe an analysis under the ICCTA is appropriate where a statute is "related to railroad safety" within the meaning of the FRSA. *See Tyrrell*, 248 F.3d at 523 (reasoning that finding preemption under the ICCTA of a statute "related to railroad safety" would implicitly repeal the FRSA's savings clause).

[6] The Court does not reach the question whether a temporary structure of the type at issue in this case would be considered an "obstruction" that is "maintained" within the meaning of the Massachusetts statute.

[7] 29 U.S.C. § 654 provides in relevant part:

(a) Each employer--

(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees[.]

7

has been dubbed its "negative preemption" provision:

> Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

29 U.S.C. § 653; *see Manes v. Metro-North Commuter R.R.*, 801 F. Supp. 954, 963 (D. Conn. 1992). Defendant contends that the FRA explicitly triggered this negative preemption provision in a 1978 policy statement outlining its relationship with OSHA in the field of railroad-worker safety. The statement provides:

> *OSHA regulations would not apply to* ladders, platforms, and other surfaces on signal masts, catenary systems, railroad bridges, turntables, and similar structures *or to walkways beside the tracks in yards or along the right-of-way*. These are areas which are so much a part of the operating environment that they must be regulated by the agency with primary responsibility for railroad safety.

FRA 1978 Policy Statement, 43 Fed. Reg. 10,583 (Mar. 14, 1978) (emphasis added). On the information available to the Court, plaintiff's injury appears to have resulted from a condition on a "walkway beside the tracks in yards." Furthermore, FRA's statement clearly asserting its authority over this area appears to be sufficient to trigger § 653 and oust OSHA jurisdiction. *See Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235, 243 (2002) ("[A]nother agency may 'exercise' its authority within the meaning of [§ 653(b)(1)] either by promulgating specific regulations or by asserting comprehensive regulatory authority over a certain category . . . ."); *Ass'n of Am. R.Rs. v. Dep't of Transp.*, 38 F.3d 582, 587 (D.C. Cir. 1994) (1978 policy statement was sufficient to remove OSHA jurisdiction over specifically-listed areas); *Velasquez v. Southern Pacific Transp. Co.*, 734 F.2d 216, 218 (5th Cir. 1984) ("It is not necessary that the FRA implement specific regulations for these areas; an assertion of authority in a policy statement is sufficient to displace OSHA regulations."). *But see Manes v. Metro-North Commuter R.R.*, 801 F. Supp. 954, 964 (D.

Conn. 1992) ("OSHA's negative preemption is only triggered where there is an actual, concrete assertion of regulatory authority," notwithstanding FRA policy statement).

Accordingly, the Court finds that OSHA's general-duty clause is not applicable, by virtue of the operation of 29 U.S.C. § 653, and may not be introduced as evidence of defendant's negligence.

### C. Negligence *Per Se*

Defendant next contends that a violation of Mass. Gen. Laws ch. 160 § 134A should not constitute negligence *per se*, nor bar a contributory negligence defense under FELA. Plaintiff does not contest this assertion, nor does the Court find any fault with the reasoning presented in defendant's filings. Accordingly, the Court finds that a violation of § 134A does not constitute negligence *per se* and would not bar defendant's contributory negligence defense.

### II. Conclusion

For the foregoing reasons, defendant's motion in limine will be GRANTED in part and DENIED in part.

**So Ordered.**

                                                      /s/ F. Dennis Saylor
                                                      F. Dennis Saylor IV
                                                      United States District Judge

Dated: July 26, 2011